[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 3 
Andrew Mason, the appellee, whose place of residence was being advertised for sale by the Sheriff of Calcasieu Parish under execution of a moneyed judgment secured against him by Charles D. Wood, the appellant, instituted this proceeding to enjoin the sale of his property on the grounds (1) that the judgment executed upon was illegally and fraudulently obtained, and (2) that the property in controversy is *Page 4 
exempt from seizure under the Constitution of 1921, Article XI, Section 1. In answer to the rule nisi Wood excepted to the petition on the ground that it disclosed neither a cause nor a right of action. In the alternative he pleaded the prescription of one year as to Mason's right to have the judgment executed upon declared null on the ground of fraud, and, with reservation of his rights under these pleas, he answered denying Mason's right to the relief sought.
The trial judge maintained the exceptions of no cause and no right of action, dismissing the suit in so far as it affected the first ground for the injunction but overruling the exceptions as to the second ground. On the merits he decreed that Mason's property was exempt from seizure under the provisions of the Constitution, and, accordingly, enjoined the sale thereof. The judgment creditor, Wood, has appealed.
The record shows that Fertita Brothers obtained a judgment against Mrs. Ethel Mason (wife of the appellee) on June 20, 1929, for $400, with interest, attorney fees, and costs; that this judgment, subject to a credit of $75.40, was transferred to Wood by Fertita Brothers on January 20, 1930; that Mrs. Ethel Mason died on September 13, 1935, her husband accepting her succession unconditionally on the 18th following and being sent into possession of all of her interest in the community property, consisting of some cash, a Ford car, and the property in controversy (lots 25, 26, and 27 in the town of DeQuincy, valued at $1,100); that Wood instituted suit against Mason and obtained a judgment against *Page 5 
him by default on May 27, 1936, for the amount due him (Wood) by the estate of Mrs. Ethel Mason; and that when the property was seized by the Sheriff of Calcasieu Parish under a writ of fieri facias issued in execution of Wood's judgment against him, Mason instituted these proceedings to enjoin the sale thereof.
The record also reveals that prior to and at the time of Mrs. Mason's death the property seized was bona fide owned and occupied by Mason and his wife as their home; subsequent thereto by Mason and Jim Charles, a cripple who was dependent upon him for support.
Section 1 of Article XI of the Constitution of 1921 provides that: "There shall be exempt from seizure and sale by any process whatever except as herein provided, and without registration, the homestead, bona fide, owned by the debtor and occupied by him, consisting of lands, not exceeding one hundred and sixty acres, buildings and appurtenances, whether rural or urban, of every head of a family, or person having a mother or father or a person or persons dependent on him or her for support * * * to the value of two thousand dollars [this amount was increased to $4,000 by Act No. 42 of 1938, adopted November 8, 1938]. * * * The benefit of this exemption may be claimed by the surviving spouse, or minor child or children, of a deceased beneficiary."
The trial judge ruled that under the holding of this court in the case of Prudential Ins. Co. of America v. Guillory,175 La. 1058, 145 So. 6, Mason did not have *Page 6 
anyone dependent upon him for support within the meaning and contemplation of the constitution and, consequently, he was not entitled to the exemption of a homestead on that ground but that he was entitled to the same as the surviving spouse under the express provisions of the above section of the constitution according to the opinion of this court in the case of Succession of White, 170 La. 403, 127 So. 883.
In the White case this court, deciding "whether a surviving widow who has no one dependent upon her for support is entitled to the homestead exemption created by the Constitution," reviewed carefully and analyzed all of the cases on the subject matter, differentiating the case under consideration from the court's holding in the case of W.T. Baker Co., Ltd., v. Davis,143 La. 215, 78 So. 473, where we affirmed the judgment of the lower court refusing to grant Davis the exemption claimed by him as surviving spouse for the reason that he had no one dependent upon him, saying that in the Davis case "unlike the present case [White case] the debt against which the exemption was urged in that case [Davis case] was the personal debt of the claimant and not the debt of the marital community," and concluding "that itis only where a widow seeks to claim the homestead exemptionagainst her own debts that she must do so as the head of a familyor have a dependent or dependents; that these conditions are notrequired when she claims the exemption against debts contractedby her husband or by the marital community-debts against whichthe husband, himself, could have *Page 7 successfully claimed the exemption; that in such a case theexemption inures to her benefit as the surviving spouse upon thedeath of her husband, the original beneficiary under theconstitutional article." (Brackets and italics ours.)
The theory of the homestead exemption is stated in the White case to be "that the obligation of the debtor to those whom he owes the duty to support is a higher obligation than the payment of his debts. The purpose of the framers of the law was to secure a home beyond the reach of financial misfortune, around which gather the affections of the family; the greatest incentive to virtue, honor, and industry. * * * This purpose would certainly be defeated if we should hold that the exemption in favor of a husband and father was not transmitted on his death to his widow and children."
Under the express provisions of the Revised Civil Code, Article 1013, when Mason accepted the succession of his wife unconditionally, he became bound for the "payment of all debts of the succession, not only out of the effects which have fallen to him from the succession, but even personally, and out of his own property, as if he had himself contracted the debts or as if he was the deceased himself * * *."
It is our opinion, therefore, that the doctrine of the Davis case is applicable and controlling here, and not that of the Succession of White, and that the trial judge erred in his decree exempting the property seized and enjoining the sale of the same. *Page 8 
We find it unnecessary to discuss the first ground urged for the issuance of the injunction since the same has been abandoned by the appellee. Counsel for appellee, however, has filed here a plea to the jurisdiction of this court and also a plea of estoppel. The former is based on the theory that since Wood did not appeal suspensively from the judgment decreeing Mason to be entitled to the exemption claimed, the operation of that judgment was not suspended at the time that Mason was adjudged a bankrupt and, consequently, such lien as might have existed was extinguished upon his (Mason's) discharge in bankruptcy. The latter plea is based on the fact that any claim or lien the appellant has was provable in the bankruptcy court and his failure to prove his lien there after having received due notice, estops him from denying that he did not intend to abandon the devolutive appeal taken some four years previous, and the rights therein involved.
"Where a lien has been acquired, such as by legal proceedings in a state court, at least four months prior to the institution of the bankruptcy proceedings and is not dissolved by the bankruptcy proceedings, as explained in §§ 245-252, notwithstanding such proceedings the creditor is entitled to pursue his remedy in the state court where it was first sought * * *." 8 Corpus Juris Secundum, Bankruptcy, p. 927, § 261. See, also, McLoughlin v. Knop, D.C., 214 F. 260; and New Orleans Compress Co., Inc., v. Katz, 185 La. 723, 170 So. 244. "A court of bankruptcy has no jurisdiction to determine the existence or validity of a *Page 9 
lien claimed by a creditor upon exempt property * * *; but the rights of creditors to subject the same to their debts must be determined in the state court." 7 Corpus Juris 363, § 643; 8 C.J.S., Bankruptcy, § 505. See, also, In re Grimes, D.C., 96 F. 529, 2 A.B.R. 730; In re Wells, D.C., 105 F. 762, 5 A.B.R. 308; In re Little, D.C., 110 F. 621, 6 A.B.R. 681; In re Castleberry, D.C., 143 F. 1018, 16 A.B.R. 159; and In re Blanchard Howard, D.C., 161 F. 797, 20 A.B.R. 422.
A mere examination of the record in the instant case will disclose that the judgment sought to be executed was secured more than four months prior to the time the bankruptcy proceedings were instituted. Consequently, there is no merit to either of the pleas filed by the appellee's counsel in this court.
For the reasons assigned, the judgment of the lower court is annulled and set aside and appellee's suit is dismissed at his cost.